ELECTROLUX CORPORATION, Plaintiff, *v.* MICHAELS BROTHERS, INC., et al., Defendants.

Supreme Court, Special Term, New York County, December 2, 1954.

*Hamilton Hicks* for plaintiff.

*William A. Michaels* for Michaels Brothers, Inc., defendant.

*Martin I. Shelton* for Ludwig Baumann & Company and another, defendants.

*Martin W. Teichman* for Richard De Silva, doing business under the name of De Silva Vacuum Repair Company, defendant.

WALTER, J. Plaintiff manufactures vacuum cleaners which it sells under the trade name Electrolux. It sells directly to the users, and its cleaners reach the user in cardboard cartons which bear its name as manufacturer and the trade name Electrolux. A prominent model, from 1937 to 1952, was Model No. 30. In 1952, plaintiff started the manufacture and sale of a new model, designated as Model 60, which has the new and distinctive feature of a closed bag which securely encloses all dirt sucked up by the vacuum action of the cleaner and which is automatically ejected by the cleaner itself when the bag becomes full of dirt. At great expense plaintiff widely advertised this new Model 60 as "The new automatic Electrolux, the only cleaner you never have to empty — it's automatic." Plaintiff sells its Model 30 cleaners for $77.50. It originally charged $119.50 for Model 60 and in July, 1953, reduced the price for Model 60 to $109.97.

For several years prior to 1953, defendant De Silva had purchased from plaintiff used Model 12 cleaners, repaired or

rebuilt them and then resold them. In May, 1953, after plaintiff had widely advertised its new Model 60 automatically emptying cleaner, defendant De Silva began the business of purchasing from plaintiff certain of its Model 30 cleaners which plaintiff had taken back from its customers who had purchased and used such cleaners and then turned them in as a part payment on new cleaners purchased by such customers from plaintiff. Such cleaners are referred to as " Trade-in " cleaners. After so purchasing such used " Trade-in " cleaners from plaintiff, defendant De Silva made certain repairs and replacements of parts and equipment and sold them to defendants Michaels Brothers, Inc., and Ludwig Baumann and Spears, Inc.

On June 18, 1953, defendant Michaels Brothers, Inc. advertised the trade-in Model 30 cleaners it had purchased from De Silva. It referred to them as factory reconstructed and as the Electrolux cleaner that never has to be emptied, and offered them for $39.95 and stated that they were $79.95 when new.

In fact, the cleaners as so advertised were not factory reconstructed, were not the Electrolux cleaner that never has to be emptied, and were not $79.95 when new. Furthermore, as delivered by De Silva to Michaels Brothers and by Michaels Brothers to its customers, those cleaners were in cardboard cartons which bore the plaintiff's trade name Electrolux in large red letters but were accompanied by some parts and equipment which were not of plaintiff's manufacture at all. They were also accompanied by a so-called instruction book and operating manual, not issued or authorized by plaintiff, which contained on the first page in prominent type " How to get better results with your rebuilt Electrolux cleaner." That book also contained a printed form of " Guarantee " which states " The factory agrees to repair or replace defective parts which may develop under normal and proper use."

Defendant Ludwig Baumann and Spears likewise advertised the trade-in Model 30 cleaners it had purchased from De Silva as " reconditioned Electrolux vacuums " and stated in respect of them " L. B.—Spears snapped up a special buy of world-famous Electrolux vacuums — reconditioned them inside and out to work like new  *  *  *  wear like new  *  *  *  look like new." In connection with the advertised price of $39 the advertisement also stated " You can have your favorite vacuum at practically a third of its original price."

In fact, the cleaners so advertised had not been reconditioned by L. B.— Spears or by plaintiff; and $39 was not practically a third of the original price of plaintiff's Model 30 cleaners, but

was practically a third of the original price of plaintiff's Model 60 cleaners.

Furthermore, those cleaners, also, were delivered in cardboard cartons which bore plaintiff's trade name Electrolux in large red letters and accompanied by a similar instruction book and by some parts and equipment which were not of plaintiff's manufacture.

In another catalogue sent out by defendant Michaels long after June, 1953, to about 150,000 persons, the trade-in Model 30 cleaners acquired by it from De Silva are described as `` expertly reconstructed Electrolux Tank Cleaner, $79.95 when new, $39.95 '' and of them the catalogue said: `` This is not just an ordinary cleaner, but a carefully reconstructed Electrolux air purifier tank cleaner that never has to be emptied. No more messy hands * * * no more dust blowing through the house. You get a six months supply of sanitary disposable bags * * * instruction and operating manuals * * * plus 12 wonderful attachments.''

In another circular, about 150,000 of which were sent out by defendant Michaels in September or October, 1953, the cleaners acquired from De Silva are referred to as `` Electrolux, Reg. $79.95 Sale $39.95.''

As the plaintiff elected to sell its trade-in Model 30 cleaners to De Silva, I think De Silva clearly had a right to rebuild or repair them and then sell them, and the other defendants who bought them from him likewise has a right to resell them. But there was no right to resell them, as all defendants have done, as rebuilt Electrolux cleaners, without disclosing, plainly and unmistakably that the rebuilding was not done by plaintiff. Fair competition requires either that the name Electrolux be removed from the cleaners, from all advertising in connection therewith, and from all packaging thereof, or that there be clearly indicated on the cleaners, in the advertising, and on the packaging, the name and address of the person or concern who has done the rebuilding or reconstructing.

I think, too, that it is a wrong to plaintiff to sell cleaners as rebuilt Electrolux cleaners when in fact some parts or equipment thereof are not of plaintiff's manufacture, and that fair competition requires that the name Electrolux be not used in any way in connection with rebuilt cleaners unless all parts and equipment thereof are of plaintiff's own manufacture.

It is no answer to say that the cleaner will function even with parts or equipment made by other manufacturers. Plaintiff is not to be subjected to the possibility of inefficient functioning by

reason of the use of parts or equipment made by others. Unless the entire cleaner as it reaches the user is wholly and completely the product of plaintiff, plaintiff's name may not be used in connection with the cleaner or the sale thereof.

Defendants have been unfair, also, in the way in which they have sought subtly to convey the idea, and in my opinion no doubt have conveyed the idea, that these rebuilt Model 30 cleaners are in fact the new Model 60 with its automatic dirt removing mechanism, and that in some way these defendants are able to supply that new automatic Model 60 at a price far less than the price fixed by plaintiff.

It is urged that defendants acted in good faith without any intent to do wrong, and perhaps that is true. But as every person must be deemed to have intended the natural and inevitable consequences of acts which he does of his own free will (*Coursey* v. *Morton,* 132 N. Y. 556, 560), the mere absence of an intent to harm is no excuse to one who actually does acts which are wrong.

Neither is it so clear that there has been such complete cessation of the wrongful acts that an injunction should be withheld as not necessary.

I conclude therefore, that plaintiff is entitled to judgment enjoining such acts as I have above described as wrongful (the exact phraseology to be determined upon the settlement of the judgment) and directing a reference (not to an official referee) to ascertain and report what sum is fair and just compensation for the injury plaintiff has sustained by reason of the defendants' acts of unfair competition herein described.

I direct the entry of judgment accordingly.